UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CARLOS ANTONIO GUZMAN TORRES,
and JOSE SANTOS GUZMAN TORRES,
on behalf of themselves and all others
similarly situated,

                                        Plaintiffs,

v.                                                      CASE NO.  3:24cv343(RCY)

MANGANARO MIDATLANTIC, LLC,

                                        Defendant.

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## I.
### INTRODUCTION

This is a proposed class action settlement of an unpaid overtime and misclassification action brought by Plaintiffs Carlos Antonio Guzman Torres and Jose Santos Guzman Torres, on behalf of themselves and all others similarly situated, ("Representative Plaintiffs" or "Plaintiffs"), against Defendant Manganaro Midatlantic LLC.  In the Complaint, Plaintiffs claimed among other things, that the Class consisted of all past and present laborers of Defendants Manganaro Midatlantic, LLC or Manganaro Building Group, LLC (subsequently dismissed as a party) who, at any time from the date three years prior to the filing of this action through the present, were hired through labor brokers to provide framing, drywall, ceiling, or similar construction labor for the benefit of Defendants and worked for Defendants in Virginia. (the "Class").  Plaintiff further alleged that the Class was not properly compensated for all of the overtime hours they worked, and that class members were misclassified as independent contractors. Plaintiffs further asserted

individual claims that they were not paid at all for certain weeks that they worked. MMA generally denied these allegations and contended that Plaintiff and the Class were properly classified as independent contractors, and/or that they were employed by entities other than Defendants, and/or that the Class was properly compensated.

As explained more fully below, the Parties have negotiated a settlement agreement (the "Agreement") that will resolve the claims of the Representative Plaintiffs and the Class. By this Unopposed Motion, Plaintiffs seek certification, for settlement purposes only, of a settlement class pursuant to Federal Rule of Civil Procedure 23. Specifically, Plaintiffs seek preliminary approval of a settlement class resolving the claims as a class action.

The Class the Parties ask this Court to preliminarily certify is:

> Those certain individuals identified on Exhibit B to the Settlement who: a) were engaged by "labor brokers" or sub-contractors; b) to perform construction-related services pursuant to subcontractor agreements with Defendant MMA; c) during the Class Period of May 15, 2021 to the Effective Date of the Settlement.

Under the terms of the settlement, each eligible individual will have the opportunity to participate, or not participate, in the settlement as he or she so chooses.

MMA will be funding the settlement and has agreed to pay the total sum of $299,000.00 to the Class, inclusive of attorneys' fees, costs, any court-approved service award to the Representative Plaintiffs, payment of Class administration costs, and employment payroll withholdings/taxes. MMA will fund the entirety of the settlement and will tender the Settlement Amount (as defined in the Agreement) to the Settlement Administrator[1] and will have no rights to reversion of any of the money paid pursuant to the terms of the Agreement. The Agreement is

---

[1] The Parties have elected to use ILYM Group, Inc. as the Class Administrator. As explained herein, notice in this matter will require robust Spanish language services and an ability to locate class members based on very limited contact information possessed by the Defendants. ILYM has agreed to provide the Spanish language and class member location services.

filed with the Motion as Exhibit 1. The Parties reached the Agreement after mediating this matter before U.S. Magistrate Judge Summer Speight, in an in-person court-ordered settlement conference, followed by extended continued negotiations between counsel.

The Parties believe the Agreement is fair, reasonable, and adequate, and that it satisfies all criteria for settlement approval.

## II.
### ISSUES PRESENTED

By this Unopposed Motion, Plaintiff asks the Court to: (1) preliminarily (for settlement purposes only) certify a proposed settlement class pursuant to Rule 23(e) of the Federal Rules of Civil Procedure; (2) appoint Butler Curwood, PLC and Coffield PLC as Class Counsel for the Class for settlement purposes only; (3) appoint Carlos Antonio Guzman Torres and Jose Santos Guzman Torres as Representative Plaintiffs for the Proposed Settlement Class; (4) preliminarily approve the terms, form, and processes explained in the Agreement, including the opt out form; (5) preliminarily approve Plaintiff's counsel's request for attorneys' fees and costs consistent with the Agreement; (6) set a date by which Plaintiff must file a motion for final settlement approval and award of attorneys' fee, expenses, and/or costs; (7) schedule any necessary Fairness Hearing; and (8) maintain jurisdiction over this matter for the purposes of enforcing the settlement during the pendency of the settlement administration process.

## III.
### SUMMARY OF FACTS AND PROCEDURAL HISTORY

Plaintiff filed this case on May 15, 2024. The Complaint alleged that Defendants violated state and federal law by failing to pay the Class overtime and classifying the Class as independent contractors rather than employees. *See Complaint,* ECF 1. The crux of the allegations in the Complaint was that MMA used "labor brokers" to provide labor for construction projects.

Plaintiffs alleged that the labor brokers supplied workers to MMA and paid workers who performed the relevant construction services (*i.e.* Class members). Plaintiffs further alleged that MMA controlled numerous aspects of the employment relationship and was, at least, one of their employers, and that MMA paid them remuneration for work performed through the labor brokers. Plaintiffs further alleged that Class members were only paid their straight hourly rate for all hours worked and that they were misclassified as independent contractors rather than employees. Plaintiffs claimed Defendants were joint employers and were thus each liable for the alleged violations of law.

MMA timely filed an Answer generally denying liability as well as the existence of any employment relationship, joint or otherwise. *See* ECF 6. After extensive written discovery and depositions of two key MMA personnel, counsel for the Parties began to explore the possibility of resolution and what data would be needed to allow such talks to be productive. A Settlement Conference before Judge Speight was held on May 28, 2025. *See* ECF 28.

The Settlement Conference did not resolve the case, but significant progress was made. Over the next few months, the Parties continued to negotiate, culminating in the Agreement now before the Court. In the context of the settlement negotiations, MMA and Plaintiff exchanged sufficient information relating to the days and hours worked by the Class to allow for meaningful and informed negotiation of the Settlement Amount. The Agreement reached resolves all claims made in this lawsuit against MMA and calls for an opt-out settlement process. By this Motion, Plaintiffs seek, and Defendant does not oppose, Court approval of the Agreement.

## IV.
## SUMMARY OF SETTLEMENT TERMS

### A.    The Settlement Fund

The Parties have agreed to settle this matter for the Settlement Amount of Two hundred and Ninety-Nine Thousand Dollars ($299,000.00).  Included in that amount are Class Counsel's attorneys' fees and out-of-pocket expenses of $ 126,783.88 ($119,600 fee, plus $7,183.88 costs), a $5,000 service award for each of the two Representative Plaintiffs, and Class Administrator costs of  no more than $17,893.75 —the remaining funds ($144,322.37) shall constitute the Net Settlement Amount.  The Net Settlement Amount includes payments to Representative Plaintiff Carlos Guzman in the amount of $20,000, and to Representative Plaintiff Jose Guzman in the amount of $4,000, as compensation for their general release and individual claims of unpaid wages under the Virginia Wage Payment Act, and liquidated damages on the same. The remainder of the Net Settlement Amount ($120,322.37) shall then be allocated to each Class Member according to their alleged overtime damages with each Class Member receiving approximately $25.00 allocated for damages associated with the misclassification claim.  Alleged overtime damages were calculated on a pro rata basis based on the number of days in which class members appeared in sign in sheets submitted for MMA jobsites, with a minimum of ten days. There are approximately 373 class members (minus a few expected duplicates, from individuals appearing twice in the data due to abbreviations of names in sign in sheets). Assuming the current Class Administration cost remains correct, the average total pretax settlement to be received by the 373 Class Members is approximately $322.58.  The actual amounts received will of course vary widely depending on the amount of days worked by each Class Member.

## B.    Schedule

Under the Agreement, within 30 days following preliminary approval, the Settlement Administrator will disseminate the notice of the settlement to the Class.  Class Members will have 45 days from the notice date to "opt out" and reject the settlement.  Class Members will have 45

days from the notice date to file any objection to the settlement.  MMA will fund the Settlement Amount through a Qualified Settlement Fund ("QSF") to be established by the Settlement Administrator, with installments made 30 days after the motion for preliminary approval ($200,000) and after the expiry of appeals following final approval ($99,000).  The Settlement Administrator will then disseminate settlement payments and payment of attorneys' fees in a manner consistent with the Agreement.

**C.    Releases**

Each Class Member will receive a Notice of Settlement which will set out his or her person specific allocation.  Each Class Member who does not reject the settlement will release MMS from classwide claims made in the Complaint.

The release reads as follows:

> **1.    Release of State Claims by Settlement Class Members.**  Upon the Effective Date, all Settlement Class Members shall fully, finally, irrevocably, unconditionally, and forever release, and discharge Defendant and Defendant Releasees, from all claims, actions, causes of action, administrative claims, demands, debts, damages, penalties, costs, interest, attorneys' fees, obligations, judgments, expenses, or liabilities, in law or in equity, whether now known or unknown, contingent or absolute, under Virginia law which: (a) are owned or held by Settlement Class Members, as against Defendant Releasees; and (b) that were asserted in the Complaint on a classwide basis for unpaid overtime wages and other damages.  This release of state claims includes all claims related to, or arising from joint employment or employment classification of the Settlement Class by Defendant during the Class Period.

The opt-in release reads as follows:

> **2.    Release by Collective Action Opt-Ins.**  In addition to the releases given in Section IV(1) above, and upon the Effective Date, those Settlement Class Members who are Collective Action Opt-Ins, shall fully, finally, irrevocably, unconditionally, and forever release, and discharge Defendant and Defendant Releasees or any of them, from any and all claims, demands, rights, liabilities, and/or causes of action of any nature and description whatsoever, whether known or unknown, at law or in equity, whether concealed or hidden, under the Fair Labor Standards Act ("FLSA"), which (a) are owned or held by Settlement Class Members, as against Defendant Releasees; and (b) that were asserted in the Complaint on a classwide basis for unpaid overtime wages and damages.  This release by Collective Action Opt-ins

includes claims related to, or arising from joint employment or employment classification of the Settlement Class by Defendant during the Class Period.

If a Class Member or Collective Action Opt-In chooses to reject the settlement by properly informing the Settlement Administrator, that individual will release no claims, and his/her allocation will be reallocated to participating Class Members on a *pro rata* basis. If a Settlement Class Member or Collective Action Opt-In does not cash their check before it expires, their allocation will be reallocated to participating Class Members on a pro rata basis. However, for any amount for reallocation over $25,000 shall be given via *cy pres* to an agreed organization or to the state's unclaimed property fund.

## D.    Service Awards

In return for the risk they incurred and the services they rendered to the Class, subject to court approval, each of the two Representative Plaintiffs will be paid a Service Award of $5,000.00.

## E.    Settlement Claims Administration

The Parties will retain a third-party company to serve as the Settlement Administrator. Consistent with the Agreement, the claim administration fee will be paid from the Settlement Fund directly. Among other things, the Settlement Administrator shall be responsible for establishing the Qualified Settlement Fund, disseminating notice, receiving opt outs, and calculating and remitting withholdings and disbursing settlement allocations.

## G.    Proposed Notice Constitutes Best Notice Practicable

Under Rule 23(e), the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e). The proposed Notice notifies Class Members of this class action and the claims asserted. The Notice is designed to inform the Class Members of the substantive terms of the proposed Agreement, their rights, the nature of the release,

and how to participate or not participate in the settlement.  It also serves to inform them how to file any objection should they wish to do so.  Additionally, as part of the proposed Notice each recipient will be informed of her/his person specific allocation. Additionally, because it is believed a large number of the Class are Spanish speaking, all communications will be sent in Spanish and English.

The Parties propose that the proposed Notice, where feasible, will be distributed via First Class Mail, email, and text message by the Settlement Administrator.  The Parties also anticipate possible use of a Spanish language radio ad campaign along with a static website to allow for potential Class Members to contact the Administrator to obtain Notice. Utilizing multiple methods of notice dissemination provides the best practicable form of notice and provides the best opportunity that each Collective/Class Member receives his or her Notice of Settlement such that each can choose whether to participate in the settlement. In order to ensure that the Notices of Settlement are received and to assist the Class Members in understanding their options, the Parties intend for Class Counsel to retain the ability to contact the Class Members for the sole purpose of facilitating settlement.

**E.    Attorneys' Fees and Litigation Costs**

Under the terms of the Agreement, subject to Court approval, the Parties agree that Class Counsel will receive $126,783.88 in attorneys' fees and costs ($119,600 in fees plus $7,183.88 in costs).  Such amount is less than Class Counsel's current lodestar.  Class Counsel will submit a request for Approval of Attorneys' Fees and Costs as part of, or in conjunction with, the Final Approval Motion, at a date to be set by this Court.

**V.**
**ARGUMENT & AUTHORITIES**

**A.    Standard of Review**

"Federal Rule of Civil Procedure 23(e) requires court-approval of any proposed settlement of a class action lawsuit, and further requires that class members receive notice of the settlement before the court approves it." *Winingear v. City of Norfolk*, No. 2:12CV560, 2014 WL 12526327, at *1 (E.D. Va. June 5, 2014) The FLSA also requires court-approval of settlements. *Id.* (citing *Patel v. Barot*, No. 4:13cv59, 2014 WL 1624001, at *4 (E.D. Va. April 23, 2014)). "The factors governing court approval of settlements under Rule 23 and the FLSA are similar." *Id.* (citing *Lomascolo v. Parsons Brinckerhoff. Inc.*, No. 1:08cv1319, 2009 WL 3094955, at *11 (E.D. Va. Sep. 28, 2009)).

There are typically three stages applicable to the review of a proposed class action settlement. *See* Manual For Complex Litigation (4th) § 21.632–.634. First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification. *See id.* at § 21.632 (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined). Second, if the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members. *Id.* at § 21.633. Third, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.* at § 21.634.

## B.    Preliminary Class Settlement Approval Process

Courts should "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case best serve the ends of justice for the affected parties and . . . promote judicial efficiency." *Gunnells v. Health Plan Services, Inc.*, 348 F.3d 417, 424 (4th Cir. 2003) (citing *In re A.H. Robins*, 880 F.2d 709, 740 (4th Cir. 1989), *cert. den.*, *Anderson v. Aetna Cas. and Sur. Co.*, 493 U.S. 959 (1989)), *cert. den.*, *Healthplan*

*Services, Inc. v. Gunnells*, 542 U.S. 915 (2004); *see also Kidwell v. Transportation Communications International Union*, 946 F.2d 283, 305 (4th Cir. 1991), *cert. den.*, 503 U.S. 1005 (1992) ("[t]rend is to give Rule 23 a liberal construction."); *Rodger v. Electronic Data Systems Corp*, 160 F.R.D. 532, 535 (E.D.N.C. 1995). When a settlement is reached prior to Rule 23 certification, the law permits a class to be certified solely for the purposes of settlement. Fed. R. Civ. P. 23(e); *Gonzalez v. O.J. Smith Farms, Inc.*, No. 5:20-CV-00086-FL, 2020 WL 7388435, at *2 (E.D.N.C. Dec. 16, 2020). Although Rule 23(e) does not delineate a procedure for court approval of settlements of class actions, courts have generally followed a multi-step process. *See* Fed. R. Civ. P. 23(e)(2).

Federal courts generally find that preliminary approval of settlement and notice to the proposed class is appropriate if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." Newberg on Class Actions § 13:13 (5th ed. 2011).

At the preliminary approval stage, courts must both ensure that all of the requirements of Rule 23(a) and one of the sections of 23(b) are satisfied and determine that the settlement falls within the range of possible approval. *See* Fed. R. Civ. P. 23(a)–(b); *Winingear*, 2014 WL 12526327, at *1 (quoting *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) (recognizing that courts must "consider plaintiffs' expected recovery balanced against the value of the settlement offer" in determining if the settlement falls within the range of possible approval)). Preliminary approval requires an exacting and thorough examination of the settlement at issue, not merely a "judicial rubber-stamp" of the parties' agreement. *Id.* The Court must be provided with the necessary information "to evaluate the

fairness or adequacy of a proposed settlement." *Id.* (citing *Martin v. Cargill, Inc*., 295 F.R.D. 380, 383–84 (D. Minn. 2013)). There is a strong judicial policy in favor of settlement. *Gonzalez*, 2020 WL 7388435, at *2 (citing *Bennett v. Behring Corp.*, 737 F. 2d 982, 986 (11th Cir. 1984)).

**C.      Rule 23's Requirements Are Satisfied by the Proposed Class Settlement**

Plaintiff seeks class certification under Rule 23(b)(3). The certification requirements of Rule 23 generally apply even when certification is for settlement purposes. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997); *see also* Fed. R. Civ. P. 23(b)(3). To be certified, the proposed class must first satisfy the four threshold requirements of Rule 23(a), which provide that:

(1)      the class is so numerous that joinder of all members is impracticable;

(2)      there are questions of law or fact common to the class;

(3)      the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4)      the representative parties will fairly and adequately protect the interests of the class.

*See* Fed. R. Civ. P. 23(a).

If the prerequisites of Rule 23(a) are met, a proposed class seeking damages must also satisfy the requirement of Rule 23(b)(3). Rule 23(b)(3) requires the district court to make a finding that (1) questions of law or fact common to class members predominate over questions affecting only individual members, and (2) that a class action is superior to the other methods for fairly and efficiently adjudicating the controversy. *See id.* at 23(b)(3). However, the trial court does not examine the merits of the underlying claims when it decides a motion for class certification. *Gonzalez*, 2020 WL 7388435, at *4 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974)).

While MMA does not oppose class certification for purposes of this Settlement, it reserves its right to challenge certification in the event the Settlement is not preliminarily or finally approved.

1.    The Proposed Class Satisfies Rule 23(a)(1)'s Numerosity Requirement

Rule 23(a)(1)'s numerosity requirement is met if the class is "so numerous that joinder of all members is impracticable." *See id.* at 23(a). There is no set number of members necessary for class certification and the decision to certify or not certify a class must be based upon the particular facts of each case. *Id.* (citing *Haywood v. Barnes*, 109 F.R.D. 568, 576–77 (E.D.N.C. 1986) (recognizing courts have "certified classes composed of as few as eighteen . . . and twenty-five members"). Here, the numerosity requirement is certainly met. There are approximately 373 members of the Class. Such numbers show that individual joinder would be impracticable. *See id.*

2.    The Proposed Class Satisfies Rule 23(a)(2)'s Commonality Requirement

Under the "commonality" requirements of Rule 23(a)(2) of the Federal Rules of Civil Procedure, at least one common question of law or fact must exist among class members. *See Haywood*, 109 F.R.D. at 577–78. Commonality under Rule 23(a)(2) is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation. *Walmart Stores, Inc. v. Dukes*, 564 U.S. 348, 350 (2011).

> Their claims must depend on a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Id.* "It is not necessary, however, that all of the questions of law or fact in a case be common to all putative class members, but only that 'a single common question . . . exist.'" *Gonzales*, 2020 WL 7388435, at * 5. Typically, commonality is satisfied when all claims are based on the same legal theory—that workers were not paid all promised wages when due, factual difference among the

putative class members will not defeat certification. *Id.* (discussing *Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117 (E.D.N.C. 2011)).

Here, the commonality requirement is satisfied because Class Members were all hired through labor brokers to perform construction services for MMA. Plaintiff believes the Class was all subjected to the same alleged practice of denial of overtime and misclassification as non-employees. As such, the success or failure of each Class Member's claim turns on the same common questions—that is, whether overtime was denied and whether they could be deemed employees of MMA.

### 3. The Proposed Class Satisfies Rule 23(a)(3)'s Typicality Requirement

Rule 23(a)(3) provides that class certification is appropriate where the claims of the representative plaintiff are typical of the claims of the class. The typicality requirement "goes to the heart of a representative parties' ability to represent a class, particularly as it tends to merge with the commonality and adequacy-of-representation requirements." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). "That is not to say that typicality requires that the plaintiffs' claim and the claims of class members be perfectly identical or perfectly aligned." *Id.* at 467. "[T]he test for typicality is not demanding." *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001). Instead, the typicality inquiry focuses on the "similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *See id.* (citations omitted).

> Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.

*Id.* (quoting 5 *James W.M. Moore, et al.*, Moore's Federal Practice ¶ 23.24[4] (3d ed. 2000)).

Page 13

The named plaintiff must "simply 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Lienhart v. Dryvit Sys., Inc*., 255 F.3d 138, 147 (4th Cir. 2001). "Factual variances in the amount of damages claimed, or differences in the availability of certain defenses against the representative plaintiffs, does not prohibit a finding of typicality as long as the claims are based on the same legal or remedial theory." *Jeffreys v. Communs. Workers of Am*., 212 F.R.D. 320, 322 (E.D. Va. 2003).

Here, Plaintiff submits there are no factual distinctions between the Representative Plaintiffs' claims and those of the Class. The Class was directly employed by labor brokers, all performed work for MMA, all performed the same type of work, and all were paid and classified according to the labor brokers' practices. The Class shares the same legal interest in recovering its unpaid wages and damages associated with misclassification based on the same legal theory—that they were paid straight time for overtime and misclassified as independent contractors.

### 4.   The Proposed Class Satisfies Rule 23(a)(4)'s Requirement for Adequacy of Representation

Rule 23(a)(4) requires a showing that the "representative parties will fairly and adequately protect the interests of the class." "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (citing *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157, n. 13 (1982)). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* at 625–26 (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). To meet the adequacy requirement, "the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys*, 212 F.R.D. at 323. A conflict between the Representative Plaintiff and the Class Members

"must be more than merely speculative or hypothetical[ ]" to defeat the adequacy requirement—instead, the "conflict must be fundamental." *Gunnells*, 348 F.3d at 430.

Here, both aspects of Rule 23(a)(4)'s adequacy requirement are met: (1) there is no conflict between the interests of the Representative Plaintiffs and the Class Members; and (2) Class Counsel is experienced in litigating complex class and multi-party actions like the one at issue. First, Representative Plaintiffs contend the following, (1) Representative Plaintiffs are typical of the Class, so they will fairly and adequately represent the interests of the class; (2) there is no potential conflict between them and the other members of the proposed class because they are challenging practices that applied uniformly to all Class Members; and (3) Representative Plaintiffs' interests do not differ from those of the Class as a whole, in that they seek to benefit the proposed Class by obtaining damages for all Class Members. Second, Class Counsel are experienced in this type of litigation and have the resources to fully litigate this matter through trial on the merits, should such further litigation be required. *See* Declarations of Zev Antell and Tim Coffield, attached hereto as Exhibits 1 and 2.

     5.    <u>The Proposed Class Satisfies Rule 23(b)'s Requirement for Predominance and Superiority</u>

Class certification under Rule 23(b)(3) requires that common issues of law or fact predominate over individual issues and that the class action be the superior method of dealing with the dispute. *See* Fed. R. Civ. P. 23(b).

     i.    *Predominance Under Rule 23(b)(3)*

Rule 23(b)(3)'s predominance prerequisite requires courts to ask "whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454, 136 S. Ct. 1036, 1045 (2016) (quoting 2 Newberg on Class Actions § 4:49 (5th ed. 2012)). Put

differently, the predominance inquiry is about whether class-wide questions are "at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Def. Comm.*, 501 F.3d 592, 619 (6th Cir. 2007).

In this case, the proposed classes satisfy the Rule 23(b)(3) predominance requirement because all Collective/Class Members share a common set of core predominate facts and legal issues, including but not limited to:

1)   All Class Members are alleged to have worked for Defendant as employees;

2)   All Class Members are alleged to have been non-exempt employees;

3)   All Class Members are alleged to have been paid straight time for overtime;

The superiority element of Rule 23(b)(3) requires that the purported class action be superior to other available methods for the fair and efficient adjudication of the controversy. *Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 274 (4th Cir. 2010). This is a fact-specific inquiry which requires a court to find the objective of the class-action can be achieved in a particular case. *Id.* Rule 23(b)(3) identifies four factors relevant to the superiority inquiry:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D). Courts also look at practical reasons that a class action may be superior such as the preservation of judicial economy. *Manuel v. Wells Fargo Bank, N.A.*, No. 3:14-cv-238, 2015 U.S. Dist. LEXIS 109780, at *48 (E.D. Va. Aug. 19, 2015).

Numerous courts have held class actions are superior in wage cases because of the threat of retaliation. *See, e.g., Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 24 (D. Mass. 2010) ("Courts have considered risk of reprisal by an employer as weighing in favor of certification"); *Perez v. Safety-Kleen Systems, Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was

superior in employment context because, inter alia, "some class members may fear reprisal"). Indeed, one court has explained that fear of employer retaliation against individuals is "a very important concern" because "the nature of the economic dependency involved in the employment relationship is inherently inhibiting." *O'Brien v. Encotech Const. Servs., Inc*., 203 F.R.D. 346, 350 (N.D. Ill. 2001); *see also Cuthie v. Fleet Reserve Ass'n*, 743 F. Supp. 2d 486, 500 (D. Md. 2010) ("reluctance to sue one's employer may inhibit some potential claimants," therefore a "class action is well-suited to protect their rights").

Here, Representative Plaintiffs contend that a class action is superior to other methods of adjudication. First, the objectives of this lawsuit—recovering unpaid overtime and misclassification damages for all Class members within the maximum statute of limitations period—can be fairly and efficiently achieved through the class resolution of this case. Second, the pertinent factors listed in Rule 23(b)(3)(A)–(D) point toward a class action being the superior method of adjudicating this case.

Under the 23(b)(3)(A) factors, no one before this Court have expressed a desire to prosecute their claims individually and about 373 similarly situated individuals stand to benefit from the resolution of this matter.  There is no reason to presume that any of the absent putative class members—none of whom have pursued these claims on his or her own—would desire to control the litigation of a separate case. It is more likely that the absent Class Members will consent to class resolution since after deducting Service Awards and Attorneys' Fees the 373 Class Members are slated to receive an average amount of $322.58. This represents over 100% of what Class Counsel believes is the Class's unpaid overtime, and over 50% of their estimated best day back pay and liquidated damages figures.  The settlement currently contemplates $25.00 per Class Member included in their Individual Settlement Amounts allocated to misclassification claims.

The superiority factor in Rule 23(b)(3)(B) is likewise resolved in favor of class resolution because there are no other similar pending suits of which Class Counsel is aware.

The Rule 23(b)(3)(C) factor also demonstrates the superiority of this class action in this forum because some of the relevant projects, including projects where the named Plaintiffs worked, on which the work in question was performed is located within this District and Division. This Court therefore has a substantial interest in the resolution of the issues raised in this litigation occurring in one forum. Accordingly, this particular forum is the most desirable and convenient forum, and superior to any other forum for this action to proceed.

Finally, and practically, a class action is superior here because the alternative method of adjudication requires holding numerous separate trials. Class resolution achieves economies of time, effort, and expense, and promote uniformity of decision.

**D.      The Proposed Class Settlement Satisfies a Preliminary Fairness Evaluation**

In determining a motion for preliminary approval of a class action settlement agreement, the Court reviews the proposed settlement to make a preliminary fairness evaluation. *See Shaver v. Gills Eldersburg, Inc*., No. 14-3977-JMC, 2016 U.S. Dist. LEXIS 54578, at *5 (D. Md. Apr. 25, 2016). Preliminary approval should be granted if the proposed settlement is within the range of possible approval. *Id.* Class Counsel submits that this settlement is well within the upper range of possible approval.  As mentioned above, this settlement will provide Class Members (with alleged federal and state overtime damages) with settlement amounts estimated to be over 100% of back wages and 50% of their best day wage and liquidated damages figure including providing all Class Members with $25.00 in recognition of alleged misclassification damages.

At this step, the court is only to determine whether there is "probable cause" that the proposed settlement is fair and reasonable. *In re Mid-Atl. Toyota Antitrust Litig*., 564 F. Supp.

1379, 1380 (D. Md. 1983). A settlement is fair where it is the product of good-faith, arm's length bargaining without collusion. *In re Jiffy Lube*, 927 F.2d 155, 159 (4th Cir. 1991). In determining fairness, courts look at "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel." *Id.*

      1.    <u>The Proposed Settlement is Fair</u>

Here, the four fairness factors favor a "probable cause" finding and approval of the proposed settlement. This settlement is not the result of collusion—but rather the result of a case that has been contested from the beginning. This case only settled after the parties engaged in a settlement conference before a U.S. Magistrate Judge and with the assistance of significant time and pay data furnished by MMA.

      i.    *Posture of the Case*

Though this case resolved early on, settlement only came after MMA and Plaintiff engaged in a settlement conference and a comprehensive damages model was created from data provided by MMA. Had the litigation continued, additional resources would have been expended, but the Class's damages likely would not. Following the May 2025, settlement conference, the parties continued to engage in negotiations and exchange critical information relating to days and time worked, a process that eventually resulted in the settlement now being presented to the Court. The parties then worked collaboratively to draft the comprehensive Agreement now presented for this Court's review and approval.

      ii.    <u>Extent of Discovery</u>

The Parties exchanged initial disclosures, responded to written discovery, including voluminous document productions by MMA, and Plaintiffs deposed two key MMA executives.

Additionally, MMA provided necessary data for the construction of Plaintiffs' damages model. Such data related to hours worked and therefore to potential damages. In addition to the discovery exchanged between the Parties, Class Counsel also conferred with the Named Plaintiffs in this matter. These conversations further corroborated the information received from MMA and allowed Class Counsel to meaningfully negotiate on behalf of the Class Members.

Formal and informal discovery in this case has been sufficient such that MMA and the Plaintiffs know the important facts affecting the case and have adequately assessed the respective benefits of settlement and potential risks of continued litigation. In addition, Class Counsel committed substantial resources to investigating and analyzing the claims of the putative class. The proposed settlement calculations are based significantly on the days and time data exchanged in discovery on behalf of the Class Members, supporting the fairness of the overall proposed settlement.

iii.  Circumstances Surrounding the Negotiations

The negotiations that resulted in this settlement were conducted at arms' length before U.S. Magistrate Judge Summer Speight. The case did not settle at the settlement conference, as the parties were not particularly close on settlement terms. But the parties continued to engage the at length in the following weeks over a series of calls, emails, and data productions, and were able to eventually reach the settlement that is now being presented to the Court. The Parties have continued to work together for weeks to fully finalize the Agreement before this Court. The Parties exchanged multiple drafts of the Agreement and held multiple further conferences to address settlement issues as they arose during the drafting process.

iv.  Experience of Counsel

Class Counsel are experienced litigators who have devoted their practice to representing employees in wage and hour litigation. *See generally* Exhibit 1 and 2. Likewise, MMA's Counsel are very experienced in wage and hour litigation and represent employers across Virginia and other numerous other states.

v.    <u>Degree of Opposition to the Settlement</u>

As Notice has not yet issued to the Class Members, Plaintiff is unable to fully respond to this factor. However, Representative Plaintiffs approved the Agreement promptly and were pleased with the results. This factor will be fully addressed in the motion for final approval, should this Court preliminarily approve the Agreement and authorize the issuance of Notice.

An examination of the four fairness factors clearly demonstrate this proposed settlement is not the result of collusion, but is the product of good-faith, arm's length bargaining. Therefore, this proposed settlement should be approved as fair.

2.    <u>The Proposed Settlement is Adequate</u>

Likewise, the adequacy factors equally favor approval of the proposed settlement. While the adequacy factors are more relevant to this Court's decision in the final approval motion, they do provide guidance at the preliminary approval stage that the settlement is appropriate for certification. *See In re Jiffy Lube*, 927 F.2d at 159.

i.    <u>Strength of Plaintiff's Case on the Merits</u>

Plaintiffs have asserted that they were misclassified as an independent contractors and denied overtime by the Defendant. Defendant has denied all of Plaintiffs' allegations and asserts that MMA was either not liable to the Class Members as an employer or that Class Members were properly classified as independent contractors and that Class Members are not owed any overtime compensation. Ultimately, liability would likely turn on whether Defendant employed or jointly

employed the Class. Plaintiffs believe that liability would have been found, but acknowledges that MMA strongly believes otherwise. The Agreement provides for substantial compensation for Plaintiffs and Class Members' claims and negates the risk of a bad result.

### ii. Difficulties of Proof and Defenses

In order to prevail on their claims, the Class would be required to prove that they were employees of the Defendant.  Doing so would likely have required a holistic analysis of the parties' relationships, and detailed interactions on the job sites.  Some of the evidence proffered would involve "he said/she said" testimony of conversations between the Class Members and supervisors and management employees of MMA. The above would have been made all the more difficult due to labor broker's non-responsiveness to third-party discovery and Plaintiff's heretofore unsuccessful attempts to obtain documents from labor brokers.  All of these uncertainties weigh in favor of the adequacy and certainty of the proposed settlement.

### iii. Duration and Expense of Additional Litigation

This relatively quick settlement is properly juxtaposed against what would likely be long and drawn out, and expensive, litigation should this matter proceed.  The length of time necessary to reach a final result would have occupied many more years of judicial resources and vast amounts of attorney time. Litigating this case to conclusion would potentially cost each side hundreds of thousands of dollars in additional attorneys' fees while likely not resulting in significantly better recoveries for the Class.

Therefore, this factor also supports the adequacy of the proposed settlement.

### iv. Solvency of Defendant and Likelihood of Recovery

The fourth adequacy factor, MMA's financial solvency, does not bear significantly either way in considering the adequacy of the settlement. However, while MMA is currently solvent and

appears to be in good financial health, Plaintiffs have no idea if that will remain true years into the future—which is a reasonable timeline by which this litigation can be resolved, absent settlement. MMA has agreed to pay $299,000.00 now to resolve the pending litigation and represents it is capable of funding the settlement payments according to the deadlines set forth herein. This proposed settlement provides compensation and a level of certainty for the Class—now, not several years into the future.

v.      <u>Degree of Opposition to the Settlement</u>

As notice of the settlement has not yet issued to the Collective/Class Members, review of this factor is premature. However, the Representative Plaintiffs have approved of the Agreement before the Court. MMA and Plaintiffs will have further insight regarding the degree of opposition to the settlement, if any, before the filing of the Final Approval Motion.

Accordingly, all five of the adequacy factors favor approving this proposed settlement. Therefore, this proposed settlement should be approved as adequate.

## CONCLUSION

Wherefore the Representative Plaintiffs, without opposition from the Defendant, requests that the Court preliminary approve the Agreement and enter the Proposed Order provided as an attachment to this Motion.


Respectfully submitted,

By: ___*Zev Antell*_____
Craig Juraj Curwood (VSB No. 43975)
Zev H. Antell (VSB No. 74634)
Butler Curwood, PLC
140 Virginia Street, Suite 302
Richmond, VA 23219
Telephone: (804) 648-4848
Fax: (804) 237-0413
Email: craig@butlercurwood.com
　　　zev@butlercurwood.com


Timothy Coffield (VSB 83430)
Coffield PLC
106-F Melbourne Park Circle
Charlottesville, VA 22901
Phone: 434-218-3133
Fax: 434-321-1636
tc@coffieldlaw.com

*Attorneys for Plaintiff and Proposed Counsel for the Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 12, 2025, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Virginia, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Zev Antell*
Zev Antell